# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Smith,                              :
               Petitioner     :
                                 :
         v.                                 :     No. 1079 C.D. 2021
                                 :     Submitted:  May 27, 2022
Pennsylvania Parole Board,                 :
               Respondent     :


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                  **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**     **FILED:  September 21, 2022**


Joshua Smith petitions for review of the September 2, 2021 Order of the Pennsylvania Parole Board (Board) that dismissed his administrative appeal of a decision recommitting him to a state correctional institution (SCI) as a convicted parole violator (CPV) and denying him credit for the time he spent at liberty on parole, also known as street time.  Smith is represented by appointed counsel Dana E. Greenspan, Esquire (Counsel).[1]  Counsel has filed an Application to Withdraw as Counsel (Application to Withdraw) and a No-Merit Letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), based on her conclusion that the issues Smith wishes to raise on appeal are without merit.  Upon review, we grant Counsel's Application to Withdraw and affirm the Board's September 2, 2021 Order.

---

[1] Counsel is an Assistant Public Defender for the Montgomery County Office of the Public Defender.

## I. BACKGROUND

Smith pleaded *nolo contendere* to burglary and was sentenced to serve two years, six months to five years in an SCI. Smith's minimum date was January 28, 2018, and his maximum date was July 28, 2020. On February 5, 2018, Smith was released on parole to a home plan that had him residing with his wife in Florida. On April 27, 2020, Smith was arrested for a domestic violence incident involving a gun that occurred on April 26, 2020, which resulted in charges of aggravated assault and felon in possession of a firearm. (Certified Record (C.R.) at 11, 14, 64-65.) Smith was released on his own recognizance on April 30, 2020. Smith pleaded guilty to these charges on September 10, 2020, and the Florida court sentenced Smith to 24 months' probation for each offense to run concurrently. (*Id.* at 12, 64-65.)

On December 28, 2020, the Board directed that a revocation hearing be held, and the Board issued a warrant for Smith's arrest on January 7, 2021. The warrant noted that, although Smith's original maximum date had expired, the original sentence would be extended due to the new conviction. Smith waived extradition, was extradited to Pennsylvania, and was received at an SCI on January 15, 2021. The Board issued a Notice of Charges and Hearing on February 10, 2021, based on the new criminal conviction, which Smith signed the next day. Also on February 11, 2021, Smith waived his rights to a parole revocation hearing and counsel, and he admitted to the new conviction. (*Id.* at 46.) The waiver form indicated that Smith "knowingly, intelligently, and voluntarily admit[ted]" to the charges, "underst[oo]d and agree[d] that this admission is binding," and that the admission could "be withdrawn if [he] submit[ted] a written withdrawal . . . within ten (10) calendar days of" February 11, 2021. (*Id.*) Nothing in the certified record reflects that Smith withdrew his admission.

By Notice of Decision mailed April 16, 2021, the Board revoked Smith's parole and recommitted him as a CPV to serve 24 months' backtime based on his new conviction. (*Id.* at 95.) The Board did not award Smith credit for his street time because the new conviction involved possession of a weapon, was assaultive in nature, and reflected domestic violence issues. (*Id.* at 95-96.) The Board issued an Order to Recommit, reflecting that Smith received no backtime credit and had 904 days remaining on his original sentence, which, when added to his custody for return date of January 13, 2021, resulted in a new parole violation maximum date of July 6, 2023. (*Id.* at 93.) Smith, through Counsel, filed an administrative remedies form, asserting that the Board abused its discretion by forcing Smith to waive the revocation hearing despite his being diagnosed with a traumatic brain injury and Asperger's Syndrome; his parole could not be revoked because he had successfully completed and was released from parole on July 30, 2020, and he should only have had to serve a penalty of three months and two days; Smith should have received credit for his street time because the new conviction only imposed probation; and the Board improperly changed Smith's expired maximum date. (*Id.* at 100.)

The Board responded to the administrative remedies form on September 2, 2021, affirming the revocation of parole and denial of credit, but reversing as to the calculation of Smith's maximum date. (*Id.* at 104-06.) The Board held the record showed that Smith received the notice of charges and hearing reflecting the new conviction; Smith signed the waiver form and admitted to the veracity of the new conviction; the waiver form indicated Smith took this "action of his own free will, without promise, threat or coercion" and the action "was knowing and voluntary"; and Smith did not withdraw his waiver/admission within the 10-day period set forth on the form. (*Id.* at 104.) Thus, the Board concluded it was authorized to revoke his

3

parole based on that waiver and admission. It next held that it had the authority to revoke Smith's parole, regardless of when its detainer was lodged or when the conviction occurred, because Smith was on parole when he committed the offense. (*Id.* (citing Section 6138 of the Prisons and Parole Code (Parole Code), 61 Pa.C.S. § 6138; *Choice v. Pa. Bd. of Prob. & Parole*, 357 A.2d 242, 243-44 (Pa. Cmwlth. 1972)).) The Board explained that its denial of street time credit was within its discretion, it articulated multiple reasons for denying credit as required by *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 474 (Pa. 2017), and those reasons were sufficient to support the denial of credit. (C.R. at 105.) It further concluded that the decision to revoke parole and deny credit for street time was supported by substantial evidence. (*Id.*) Finally, the Board agreed that Smith's parole violation maximum date should be adjusted by using January 7, 2021, the date of the warrant, rather than January 13, 2021, the date Smith waived extradition, resulting in a new maximum date of June 30, 2023. (*Id.*)

Smith, again through Counsel, filed a Petition for Review (Petition) with this Court. Therein, Smith asserted the "Board abused its discretion by forcing [him] to waive his revocation hearing despite his diagnosis of Asperger's Syndrome and [a] traumatic brain injury"; in "revoking his parole after his successful completion of parole prior to the new conviction"; and in denying Smith credit where his new conviction was not designated a crime of violence under Section 6138(a)(2.1) of the Parole Code and the new conviction resulted only in probation. (Petition for Review ¶¶ 6-10.)

## II. APPLICATION TO WITHDRAW

On December 16, 2021, Counsel filed the Application to Withdraw and No-Merit Letter. Before appointed counsel may withdraw from representation in a case

4

in which the right to counsel does not derive from the United States Constitution,[2] such as here, the *Turner* or no-merit letter must contain: (1) the nature and extent of counsel's review; (2) the issues the petitioner wishes to raise; and (3) counsel's analysis in concluding that the petitioner's appeal is without merit. *Turner*, 544 A.2d at 928; *Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25 (Pa. Cmwlth. 2009). In addition, counsel must send the petitioner a copy of the no-merit letter, "a copy of counsel's petition to withdraw," and a statement advising the petitioner of his right to proceed with new counsel or pro se. *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009). Once counsel satisfies the procedural requirements of *Turner*, this Court will "conduct its own review of the merits of the case." *Zerby*, 964 A.2d at 960.

Here, Counsel has complied with the above service requirements, i.e., Counsel served Smith with a copy of the No-Merit Letter, the Application to Withdraw, and this Court's Order advising Smith that he may obtain substitute counsel or file a brief in support of his petition for review.[3] Further, Counsel's No-Merit Letter complies with *Turner*'s requirements. Counsel's No-Merit Letter details Counsel's review of the Certified Record and relevant law. After summarizing the available factual and

---

[2] A constitutional right to counsel arises when the petitioner presents a

> colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25-26 (Pa. Cmwlth. 2009) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). Smith's challenges do not fall within these parameters and, as such, Counsel was only required to file a no-merit letter in order to withdraw from representation of Smith.

[3] Smith has not filed a response through new counsel or a brief on his own behalf.

procedural history of this matter, Counsel addresses the issues set forth in the Petition and determines that they are without merit. Specifically, Counsel explains that there was no evidence in the Certified Record that Smith signed the waiver and admitted to the new conviction under duress, particularly given the acknowledgements within the waiver and the lack of evidence that the waiver was withdrawn, and, therefore, no due process violation occurred. (No-Merit Letter at 3.) Counsel states that under Section 6138(a)(2), a parolee is to be reentered to serve the remainder of the term he would have been compelled to serve had there been no parole but may serve only the remaining balance of his unexpired, judicially imposed term, which is what Smith's new parole violation maximum date of June 30, 2023, reflects. (*Id.* at 4.) Counsel also explains that there was no abuse of discretion in not granting Smith credit for his street time or his time after July 30, 2020, when his sentence expired, because credit decisions are discretionary, the offenses to which Smith pleaded guilty occurred while he was on parole, and the reasons offered for denying credit were sufficient under *Pittman*. (*Id.* at 3-4.) For these reasons, Counsel maintains that the Petition is without merit and the Board's Order should be affirmed. Having concluded that Counsel has met the technical requirements of *Turner*, we will conduct our own review of the Board's Order.

## III. MERITS REVIEW

Smith first challenges his waiver of the revocation hearing and counsel, and his admission of the new conviction as being insufficient to support the revocation of his parole due to his being diagnosed with Asperger's Syndrome and a traumatic brain injury. Pursuant to Section 71.4(1) of the Board's Regulations, a revocation hearing is to "be held within 120 days of when the Board receive[s] official verification of a plea of guilty" by a parolee. 37 Pa. Code § 71.4(1). The revocation

6

hearing is where the parolee, through provided counsel if the parolee is unable to afford private counsel, has "[t]he right to speak, to have voluntary witnesses appear and to present documentary evidence." 37 Pa. Code § 71.4(2)(iv). These provisions satisfy the requirements of due process. *See Fumea v. Pa. Bd. of Prob. & Parole*, 147 A.3d 610, 617-19 (Pa. Cmwlth. 2016) (describing how Section 71.4 of the Board's Regulations was promulgated to meet the standards of due process).

The Certified Record shows Smith was provided an opportunity to be heard at a revocation hearing and to have counsel represent him, but he waived both those rights and admitted to having been convicted in Florida of aggravated assault and felonious possession of a firearm. Although Smith asserts his waiver and admission should be set aside due to his Asperger's Syndrome and traumatic brain injury diagnoses, his administrative remedies form simply states that the "Board abused its discretion by forcing [Smith] to waive his revocation hearing despite his diagnosis of [A]sperger[']s and [a] traumatic brain injury." (C.R. at 100.) Smith did not, and does not, explain or otherwise indicate how these conditions prevented him from understanding what he was doing when he signed the waiver and admission form or from withdrawing his waiver and admission in the 10 days following his execution of that form. And, there is nothing in the record that would support a finding that the waiver and admission were not voluntary because there is no explanation as to why Smith believes the Board forced him into signing the form. Accordingly, we are not persuaded that this is a reason to set aside the waiver and admission form.

That form, signed by Smith, specifically states:

> I have been advised of my rights to a parole revocation hearing and counsel at that hearing. I have also been advised that there is no penalty for requesting counsel, that free counsel is available if I cannot afford to retain counsel, and I have been provided the name and address of the local public defender. **With full knowledge and understanding of**

7

**these rights**, I hereby waive my right to a parole revocation hearing and counsel at that hearing. **I waive these rights of my own free will, without any promise, threat or coercion**.

(C.R. at 46.) Smith signed this statement on February 11, 2021, and his signature was witnessed. The form also stated:

> On the 11th day of February 2021 I, Joshua Smith, **do knowingly, intelligently, and voluntarily admit that:** I was convicted of, plead[ed] guilty or plead[ed] no contest to the new criminal offense(s) listed on the attached PB 257N[, which was signed by Smith and provides the arrest and conviction date, location, docket number, offenses, and sentence,] dated 2/10/21[, ] that the **conduct underlying the charge occurred while I was on parole/delinquent on parole, I have been convicted of the offense(s)** in a court of record and the offense(s) was punishable by imprisonment. Specifically, **I knowingly, intelligently, and voluntarily admit that I have been convicted of**
>
> > Felonious possession of Firearm (F2)
> > Aggravated Assault (F3)
>
> at Docket No(s). 20-CF0019151CFAXES
>
> in violation of parole. **I understand and agree that this admission is binding and may only be withdrawn if I submit a written withdrawal** to my supervising agent, **within ten (10)** calendar **days** of the date written above.

(*Id.*) These statements are followed by Smith's signature, given on February 11, 2021, followed by the signature of a witness. (*Id.*) From this form, Smith admitted to being advised of his rights and that his admissions are binding, and Smith agreed that he was waiving those rights and making these admissions knowingly, intelligently, and voluntarily. Importantly, the form provides an express means for parolees to revoke their waiver and admission, but nothing in the record indicates that Smith ever submitted such revocation or was prevented from doing so by his

8

medical conditions. Thus, there was no abuse of discretion in the Board relying on Smith's admission of the new conviction to support the revocation of his parole. Moreover, the finding that Smith had a new conviction for crimes he committed in Florida while on parole is supported not only by Smith's admissions, but also by certified court documents from Florida, including the guilty plea forms signed by Smith and the judgment of the Florida Court reflecting that Smith was convicted based on his guilty plea. (C.R. at 64-65, 71-74, 80-87.) These latter documents were noted in the Hearing Report as "other" documentary evidence that supported the existence of a new conviction. (*Id.* at 59.) For these reasons, the Board's reliance on Smith's new conviction to revoke his parole is supported by the record.

Smith next argues the Board abused its discretion in "revoking his parole after his successful completion of parole **prior to the new conviction**." (Petition for Review ¶ 10 (emphasis added).) While Smith focuses on the timing of the new conviction, it is the date of the **offense** that governs. Section 6138(a)(1) of the Parole Code provides the Board with the discretion to "revoke the parole of a paroled offender if the offender, **during the period of parole** . . . , **commits a crime** punishable by imprisonment, . . . to which the offender pleads guilty . . . at any time thereafter in a court of record." 61 Pa.C.S. § 6138(a)(1) (emphasis added). Under this provision, the Board retains the authority to revoke the parole of a parolee, even after the expiration of the original maximum sentence, where the criminal offense occurred during the period of parole. *Price v. Pa. Bd. of Prob. & Parole*, 117 A.3d 362, 365-66 (Pa. Cmwlth. 2015). Here, the offenses to which Smith pleaded guilty occurred in April 2020, **prior** to the July 28, 2020 expiration of Smith's original maximum sentence. (C.R. at 1, 14, 16-17.) Because the offenses occurred while

9

Smith was on parole, the Board retained the authority to revoke Smith's parole based on the new conviction. 61 Pa.C.S. § 6138(a)(1); *Price*, 117 A.3d at 365-66.

Smith last challenges the Board's decision not to give him any credit toward his backtime. Smith argues he should have received credit for his street time because the new conviction was not a crime of violence under Section 6138(a)(2.1). Smith also appears to claim he is entitled to credit for time he spent in custody on the new charges because the sentence imposed for those charges was only probation. Based on our review of the record and the law, we discern no error or abuse of discretion in the Board's denial of credit.

Section 6138(a)(2) and (2.1)(i) of the Parole Code states:

(2) If [an] offender's parole is revoked, the offender shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

(2.1) The [B]oard may, in its discretion, award credit to an offender recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

(i)     The crime committed during the period of parole . . . is a crime of violence or a crime listed under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders).

61 Pa.C.S. § 6138(a)(2), (2.1)(i). Our Supreme Court explained in *Pittman* that a CPV does not automatically forfeit street time credit under Section 6138(a)(2), and the Board retains the discretion to grant credit for street time except as provided in Section 6138(a)(2.1). 159 A.3d at 474-75. In making this determination, "the Board must articulate the basis for its decision to grant or deny a CPV credit for [street] time" contemporaneously with that decision. *Id.* at 474. This allows for appellate

10

review of the Board's exercise of its discretion. *Plummer v. Pa. Bd. of Prob. & Parole*, 216 A.3d 1207, 1211 (Pa. Cmwlth. 2019). The Board's explanation does not have to be extensive, and, in most instances, a single sentence likely will suffice. *Id.* "In exercising its discretion in a credit determination, 'the Board's statement of reasons should be informed by aggravating and mitigating circumstances and account for the parolee's individual circumstances.'" *Id.* (quoting *Marshall v. Pa. Bd. of Prob. & Parole*, 200 A.3d 643, 652 (Pa. Cmwlth. 2018)). The reasons also must "relate[] to the parolee's offenses" and be "accurate." *Marshall*, 200 A.3d at 650. Finally, the "Board's stated reason [should be] documented in the record and afford[] the parolee notice of the specific acts being referenced." *Plummer*, 216 A.3d at 1212 (citing *Vann v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 1067 C.D. 2017, filed Apr. 10, 2018)).[4]

Under Section 6138(a)(2.1)(i), the Board would have had no discretion to award credit for street time if Smith's new conviction had been for a crime of violence under subsection (i). However, the Board was not **required** to award credit for street time because his new conviction was not for a crime of violence. The Board retains its discretion to award credit, or not, for Smith's street time, and, acting within that discretion, it decided not to grant such credit. The contemporaneous reasons given by the Board for the denial were that the new conviction involved possession of a weapon, was assaultive in nature, and reflected domestic violence issues. (C.R. at 95-96.) These reasons account for Smith's individual circumstances, relate to Smith's offenses, and are accurate, as Smith was convicted of aggravated assault and felonious possession of a weapon as a result of a domestic violence incident. Finally, the reasons given by the Board were documented in the

---

[4] *Vann* is cited for its persuasive value pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

11

record and Smith had notice of them because he pleaded guilty to those charges. Accordingly, the Board's explanation comports with *Pittman*'s requirements, and there was no abuse of discretion in the Board denying Smith credit for his street time.

To the extent Smith also appears to argue that he is entitled to backtime credit under *Martin v. Pennsylvania Probation and Parole*, 840 A.2d 299 (Pa. 2003), because the new conviction imposed only probation, this argument is without merit. *Martin* applies where a parolee's pre-sentence "confinement is a result of **both** the detainer for a parole violation **and** the failure to meet conditions of bail on the new offense." *Id.* at 308 (emphasis in original). Here, the Board did not issue its detainer until January 7, 2021, which was after Smith was convicted and sentenced to probation on the new charges. Thus, there was no point when Smith was confined on both a Board detainer and the new charges. Therefore, there was no abuse of discretion in the Board not otherwise granting Smith credit toward his backtime.

## IV. CONCLUSION

For the foregoing reasons, we grant the Application to Withdraw and affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

12

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Smith,                                    :
                Petitioner            :
                                       :
         v.                                      :   No.  1079 C.D. 2021
                                       :
Pennsylvania Parole Board,            :
                Respondent         :

## **O R D E R**

**NOW**, September 21, 2022, the Application to Withdraw as Counsel filed by Dana E. Greenspan, Esq. is **GRANTED**, and the Pennsylvania Parole Board's September 2, 2021 Order is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** President Judge